UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the Matter of the Complaint of
BARRY GILFIX, Owner of the
2016 10' 10" Sea-Doo with Hull
Identification No. YDV09542B616
For Exoneration From or Limitation
of Liability,

     Plaintiff.
_____/

Civil Action No. 21-CV-10330

HON. BERNARD A. FRIEDMAN

## **OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS, AND DENYING PLAINTIFF'S MOTION TO STRIKE**

This matter is presently before the Court on plaintiff's "motion to dismiss Counts I, II, and IV of defendant/counter-claimants' counterclaim . . . and motion to strike portions of the affidavits of Terence Mousel, Jr. and Rachel Gill" (ECF No. 18). Counter-claimants have responded and plaintiff has replied. Pursuant to E.D. Mich. 7.1(f)(2), the Court shall decide these motions without a hearing.

This is an admiralty action in which plaintiff seeks exoneration from or limitation of liability pursuant to the Shipowners' Limitation of Liability Act, 46 U.S.C. § 30501, et seq., regarding a fatal boating accident that occurred on Lake St. Clair on August 8, 2020. According to the complaint, plaintiff is the owner of the vessel at issue, a Sea-Doo personal water craft. Compl. ¶¶ 3-4. Plaintiff further alleges:

> 6. On August 8, 2020, GILFIX gave the Vessel to Robert Cottingham, Jr., known to GILFIX to be an experienced vessel operator, to operate upon the waters of Lake St. Clair in Michigan.
>
> 7. On the evening of August 8, 2020, the Vessel was in operation on Lake St. Clair near the mouth of Muscamoot Bay and was being operated by Robert Cottingham, Jr.
>
> 8. On the evening of August 8, 2020, . . . as the Vessel was making

> her way across the Lake, a 31-foot Silverton pleasure craft, upon information and belief owned and operated by Johnathan Brown, collided with, and ran over, the Vessel, at an excessive rate of speed for conditions then existing ("the Occurrence").
>
> 9. Robert Cottingham, Jr., the operator of the Vessel, died as a result of injuries sustained in the Occurrence.

*Id.* ¶¶ 6-9. The complaint also alleges:

> 14. Any injuries, losses and damages that occurred to any persons or property as a result of the Occurrence, including any injuries, losses and damages that any person and/or the Estates and heirs of Robert Cottingham, Jr. allege they may have sustained as a result of the Occurrence, and for which claims may be made, were occasioned and incurred without the privity and knowledge of GILFIX in that (a) they were occasioned by the navigation of the vessels involved, neither of which GILFIX was piloting and GILFIX was not aboard either vessel; (b) in advance of the Occurrence, GILFIX was unaware, and had no reason to anticipate, that a navigational error by anyone might occur; (c) the person piloting the Vessel at the time of the collision was fully qualified to operate such a vessel; and (d) GILFIX's conduct was in all respects prudent and did not improperly put into motion or proximately cause the Occurrence.

*Id.* ¶ 14.

> For relief, plaintiff asks that the Court
>
> adjudge and find:
>
> (1) That the Plaintiff, BARRY GILFIX, is fully exonerated and not liable to any person or entity, to any extent, for any death, injury, damage, loss or claim whatsoever in any way arising out of or in consequence of the Occurrence and the matters set out hereinabove; and
>
> (2) Alternatively, if the Plaintiff, BARRY GILFIX, shall be jointly and/or individually judged liable, then said liability and damages to any and all claimants collectively shall be limited to, and not exceed, the amount of the Plaintiff's interests in the Vessel and pending freight ($0.00), and that the Plaintiff, BARRY GILFIX, is discharged from any and all further liability collectively to all complaints by the payment of an amount equal to that amount; . . .

*Id.*, pp. 8-9.

Cottingham's mother, Sherry Zunk, has filed an answer and counterclaim on behalf of Cottingham's estate and on behalf of his sisters (Andrea Biggs, Erica Cottingham, and Jamie Green) and grandmother (Betty Zunk). The counter-claimants allege that plaintiff supplied Cottingham with large quantities of alcohol and then, although Cottingham was in a visibly intoxicated state, allowed him to operate the Sea-Doo. Specifically, the counterclaim alleges that Cottingham and two of his friends (Terence Mousel Jr. and Rachel Gill) borrowed plaintiff's two Sea-Doos, rode across Lake St. Clair from St. Clair Shores to Muscamoot Bay, where they tied the Sea-Doos to plaintiff's boat, and then spent several hours drinking with plaintiff aboard plaintiff's boat. Further,

> 19. Upon information and belief, Cottingham arrived on Plaintiff's boat well before noon.
>
> 20. Upon the boat, Cottingham was furnished both beer and liquor by Plaintiff.
>
> 21. Cottingham was on the boat with Plaintiff, drinking for many hours, during which time he was provided excessive amounts of alcohol by Plaintiff.
>
> \* \* \*
>
> 24. Plaintiff[] had Mr. Cottingham pilot one of Plaintiff's jet skis back to Saint Clair Shores for him.
>
> 25. At that time, Mr. Cottingham was highly and visibly intoxicated.
>
> 26. Plaintiff knew Cottingham was highly intoxicated . . .
>
> 27. Plaintiff's boat could have pulled both of his jet skis behind it, the entire way back from Muscamoot Bay to Saint Clair Shores, without issue.
>
> 28. Plaintiff also could have allowed Cottingham to leave the jet ski

3

> there, or to remain on his boat to wait until he sobered up to operate the jet ski.
>
> 29. Because it was getting late in the evening and the waters of Lake Saint Clair were choppy, Plaintiff requested that Ms. Gill ride back to Saint Clair Shores with him in his boat.
>
> \* \* \*
>
> 32. Mousel and Cottingham then began the dangerous voyage back to Saint Clair Shores, each on a large and powerful jet ski owned by Plaintiff.
>
> \* \* \*
>
> 34. Very early in said voyage, while still leaving the bay, Cottingham misjudged the speed of a much larger vessel, or the speed of his own jet ski, and in attempting to pass in front of it, collided with it.
>
> 35. Cottingham . . .was run over by a much larger vessel.
>
> \* \* \*
>
> 49. Cottingham was pronounced dead on arrival when he arrived at the Ascension River District Hospital in East China, in the evening of August 8, 2020.

Countercl. ¶¶ 19-21, 24-29, 32, 34-35, 49.

The counterclaim asserts four counts. Count I ("negligence pursuant to federal law") claims that plaintiff was negligent "when he required, encouraged, and/or allowed Cottingham to operate the jet ski on August 8, 2020 after a day of providing Cottingham with alcoholic beverages." *Id*. ¶ 63. Count II ("negligence pursuant to Michigan law") asserts a negligence claim on the same grounds under state law. Count III ("wrongful death pursuant to M.C.L. § 600.2922(1)") asserts a claim under the Michigan wrongful death statute. And Count IV ("declaratory action") seeks a declaration that plaintiff "has wrongfully invoked the Limitation of Liability Act, 46 USC § 30505 et seq."

4

Plaintiff seeks dismissal of Counts I and II on the grounds that counter-claimants' claim under Michigan's wrongful death statute is their sole remedy. He seeks dismissal of Count IV on the grounds that the requested declaration serves no purpose and is improperly pled. Additionally, plaintiff asks the Court to strike some of the averments in Mousel Jr.'s and Gill's affidavits on the grounds that they are not based on personal knowledge.

Count I ("negligence pursuant to federal law"), while perhaps inartfully worded, is not subject to dismissal. Plaintiff concedes that general maritime law recognizes a claim for negligently-caused death. *See* Pl.'s Reply at 2 ("General maritime law . . . holds that a non-seafarer can recover for a wrongful death occurring in state territorial waters."). This comports with the Supreme Court's statement in *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 811-12 (2001), that "[t]he general maritime law has recognized the tort of negligence for more than a century, and it has been clear since *Moragne* that breaches of a maritime duty are actionable when they cause death, as when they cause injury." Plaintiff's argument is that Count I fails because it asserts a claim for "*negligence*, not wrongful death." Pl.'s Reply at 2 (emphasis in original). But the allegations in the "statement of facts" section of the counterclaim, as well as those within Count I itself, make clear that the claim being asserted is that plaintiff's negligence caused Cottingham's death. *See, e.g.,* Countercl. ¶ 65 ("Cottingham's fatal accident would not have occurred but for Plaintiff's above-described breach."). This suffices to state a claim for negligently caused death, the type of claim recognized in *Garris.* Further, a wrongful death claim under general maritime law may be pursued along with a wrongful death claim under state law. *See Garris*; *see also Yamaha Motor Corp v. Calhoun*, 516 U.S. 199, 202 (1996) (noting that "state remedies remain applicable in such cases and have not been displaced by the federal maritime wrongful-death action recognized

in *Moragne*").

While the Court shall deny plaintiff's motion to dismiss Count I, plaintiff correctly argues that a wrongful death action under general maritime law may be brought only by the appointed representative of the decedent's estate. *See Ivy v. Sec. Barge Lines, Inc.*, 585 F.2d 732, 734 (5th Cir. 1978), *on reh'g*, 606 F.2d 524 (5th Cir. 1979); *Matter of Alpha VesselCo, LLC*, No. 6:19-CV-01194, 2021 WL 1084403, at *2 (W.D. La. Mar. 19, 2021); *Matter of Am. River Transp, Co., LLC*, No. CV 18-2186, 2019 WL 2847702, at *7 (E.D. La. July 2, 2019). Therefore, this claim may be prosecuted only by Sherry Zunk, the personal representative of Cottingham's estate.

Count II asserts a claim for "negligence pursuant to Michigan law." In Michigan, "the wrongful death act provides the exclusive remedy under which a plaintiff may seek damages for a wrongfully caused death." *Jenkins v. Patel*, 684 N.W.2d 346, 350 (Mich. 2004). Counter-claimants acknowledge this, but argue that their Count II should not be dismissed because "it is brought in conjunction with Michigan's Wrongful Death Statute which requires a wrongful act, such as negligence, be pled." Resp. Br. at 4. The wrongful death statute does require that the death be "caused by wrongful act, neglect, or fault of another, and [that] the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages." Mich. Comp. Laws § 600.2922(1). Sherry Zunk, as the representative of the estate,[1] may attempt to make such a showing by presenting evidence that Cottingham's death was caused by plaintiff's negligence. The allegations concerning his alleged negligence are presented in the

---

[1] The wrongful death statute states that "[e]very action under this section shall be brought by, and in the name of, the personal representative of the estate of the deceased." Section 600.2822(2). Therefore, plaintiff correctly argues that the only person who may bring this claim is the personal representative of Cottingham's estate, Sherry Zunk.

"statement of facts" section of the Counterclaim and within Count III, which asserts a claim under the wrongful death statute. As the statute provides the exclusive state remedy in this matter, neither Sherry Zunk nor the other family members may assert a separate *claim* for negligence, and Count II plainly is such a claim. Therefore, Count II of the counterclaim must be dismissed.

Plaintiff next seeks dismissal of Count IV, in which the counter-claimants seek a declaration that plaintiff "has wrongfully invoked the Limitation of Liability Act." Plaintiff argues that the requested declaration would not serve a useful purpose and that counter-claimants misstate the applicable negligence standard. In their response brief, counter-claimants clarify that they seek a ruling that plaintiff is not entitled to relief because the act does not exonerate him for his own negligence. *See* Resp. Br. at 6-7. The Court shall deny this aspect of plaintiff's motion without prejudice. The issues involved in Count IV go to the merits of the case and must be resolved either on summary judgment or at trial. Both parties will be free to present argument and evidence concerning plaintiff's negligence, if any, as well as the applicable legal standards, at those junctures. However, as Sherry Zunk, the personal representative of Cottingham's estate, is the only party who has standing to seek relief under Counts I and III, she is likewise the only party who may seek this declaration.

Finally, plaintiff asks that the Court strike certain of the averments contained in the affidavits of Terence Mousel Jr. and Rachel Gill on the grounds that they are not based on personal knowledge or contain hearsay. Plaintiff relies on Fed. R. Civ. P. 12(f).[2]

---

[2] Rule 12(f) states:

> Motion to Strike. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

7

It is unclear why counter-claimants attached these affidavits to their counterclaim. Nonetheless, plaintiff has not shown that any of the averments in question may be stricken on the grounds that they are "redundant, immaterial, impertinent, or scandalous." As this Court has noted,

> Rule 12(f) motions "are viewed with disfavor and are not frequently granted." *Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). Generally, the matter to be stricken must have "no possible relation to the controversy." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).

*House of Providence v. Meyers*, 458 F. Supp. 3d 621, 647 (E.D. Mich. 2020). Further, Rule 12(f) allows the Court to strike such matter only "from a pleading," and the affidavits are not pleadings but rather exhibits to a pleading. Exhibits to a pleading are considered to be a part thereof only if they are "written instruments," *see* Fed. R. Civ. P. 10(c), and affidavits are not written instruments. As the court explained in *Benzon v. Morgan Stanley Distribs., Inc.*, No. 3:03-0159, 2004 WL 62747, at *2 (M.D. Tenn. Jan. 8, 2004),

> [a] "written instrument" within the meaning of Rule 10(c) is a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement. *DeMarco v. DepoTech Corp.*, 149 F. Supp.2d 1212, 1219 (S.D. Cal. 2001). The documents that satisfy this definition consist largely of documentary evidence, specifically, contracts, notes, and other writings on which a party's action or defense is based. *Id.*

The Court concludes that Rule 12(f) does not apply to the affidavits attached to the counterclaim. However, if counter-claimants offer these affidavits in support of a motion or

---

> (1) on its own; or
>
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

response, or at trial, plaintiff will be free to challenge them to the extent any of the averments contain inadmissible hearsay or are not based on personal knowledge.

For the reasons stated above,

IT IS ORDERED that plaintiff's motion to dismiss is granted in part and denied in part as follows: The motion is granted as to Count II (negligence pursuant to Michigan law), and Sherry Zunk is the only counter-claimant who may pursue Counts I, III, and IV. The Clerk is directed to terminate the other counter-claimants. Otherwise, plaintiff's motion to dismiss is denied.

IT IS FURTHER ORDERED that plaintiff's motion to strike is denied.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
Dated: July 6, 2021          SENIOR UNITED STATES DISTRICT JUDGE
      Detroit, Michigan